**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MAURICIO MARQUEZ<br>8904 Royal Crest Drive<br>Hyattsville, Maryland 20783 | *<br><br>* |
| Plaintiff | * |
| v. | * |
| MICHAEL TAVENNER<br>1506 Colonial Terrace<br>Arlington, Virginia 22209 | *<br><br>* |
| | * |
| Defendant | |

\*   \*   \*   \*   \*   \*   \*

**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF**
**FIDUCIARY DUTY, INDEMNIFICATION, AND ACCOUNTING**

Mauricio Marquez ("Marquez" or "Plaintiff"), by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure 3, 7, and 8, files this Complaint for Breach of Contract, Breach of Fiduciary Duty, Indemnification, and Accounting against Defendant, Michael Tavenner (the "Defendant") and in support thereof states as follows:

**Jurisdiction and Venue**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this matter involves citizens from different states. Additionally, the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(2), as a substantial part of the events giving rise to the claim occurred in this district and the business of which was the subject of the transaction in this case is located in the District of Columbia. Jurisdiction over the Defendant is property because the Defendant owned forty-nine percent (49%) of a District of

Columbia corporation. Furthermore, the Defendant conducted business in the District of Columbia from the premises located at 1800 M Street, Washington, D.C. 20036 and his actions that caused the harms occurred in the District of Columbia.

## Parties

3.  Plaintiff Mauricio Marquez is an adult resident of the State of Maryland residing at 8904 Royal Crest Drive, Hyattsville, Maryland. Marquez is the owner of fifty-one percent (51%) of the shares of stock in Ooh-La-La, Inc ("Ooh-La-La"). Ooh-La-La, is a District of Columbia corporation with its principal place of business located at 1800 M Street, Washington, D.C. 20036. Currently, Defendant, Tavenner, operates the Yuca Restaurant and Lounge from this location.

4.  The Defendant is an adult resident of the Commonwealth of Virginia residing at 1506 Colonial Terrace, Arlington, Virginia 22209. The Defendant previously owned forty-nine percent (49%) of the shares of stock in Ooh-La-La.

## Facts

5.  On or about November 23, 2003, the Plaintiff and Defendant executed a Purchase and Sale of Stock Agreement (the "Stock Purchase Agreement"). A copy of the Stock Purchase Agreement is attached hereto as **Exhibit 1**. At the same time, the parties executed a Shareholder's Agreement (the "Shareholder's Agreement"). A copy of the Shareholder's Agreement is attached hereto as **Exhibit 2**.

6.  Pursuant to the Stock Purchase Agreement, Tavenner purchased two hundred ninety-four (294) shares of Ooh-La-La from Marquez. Tavenner tendered sixty thousand dollars ($60,000.00) for the purchase of these share.

7. Prior to the execution of the Stock Purchase Agreement and Shareholder's Agreement, Marquez owned one hundred percent (100%) of the outstanding shares of stock in Ooh-La-La. At that time, Ooh-La-La operated a Latin theme restaurant and nightclub from the premises located at 1800 M Street, Washington, D.C. 20036. In order to purchase Ooh-La-La and obtain an assignment of the lease for the premises, Marquez had been required to post a letter of credit with Riggs Bank to provide adequate assurances of payment to the landlord. The Shareholder's Agreement required the letter or credit to remain in place until Tavenner purchased the remaining shares of Ooh-La-La from Marquez.

8. Pursuant to the terms of the Shareholder Agreement, Tavenner agreed to be responsible for any future liabilities and obligations of Ooh-La-La. Further, Tavenner was given the power and authority to oversee the operations of the business as he saw fit. Marquez became a silent owner.

9. At the time the Shareholder's Agreement was executed, the parties understood that the restaurant would close for a short period of time for renovations. The parties contemplated that Tavenner would subsequently re-open and operate the Ooh-La-La from its leased premises. The restaurant was closed in January, 2004 for renovations.

10. Subsequently, in March, 2004, Tavenner re-opened Ooh-La-La, as the Yucca Lounge. The restaurant is still operating as the Yuca Lounge.

11. Pursuant to the terms of the Shareholder's Agreement, Marquez was to receive monthly payments of four thousand dollars ($4,000.00) commencing thirty (30) days after the restaurant re-opened. Since, the restaurant re-opened in March, 2004, Tavenner was required to begin making monthly payments to Marquez in April, 2004.

12. Marquez received the following monthly payments from Tavenner: 1) April 30, 2004 - four thousand dollars ($4,000.00); 2) August 3, 2004 - two thousand dollars ($2,000.00); 3) August 10, 2004 - two thousand dollars ($2,000.00); 4) August 8, 2004 - two thousand five hundred dollars ($2,500.00); 5) September 15, 2004 - two thousand dollars ($2,000.00); 6) November 20, 2004 - four thousand dollars; 7) February 5, 2005 - two thousand dollars ($2,000.00); 8) February 18, 2005 - two thousand dollars ($2,000.00); 9) March 8, 2005 - two thousand dollars; and 10) March 28, 2005 - two thousand dollars ($2,000.00). These payments total twenty-four thousand five hundred dollars ($24,500.00). The amount past due for this period of time is $47,500.00.

13. Additionally, Ooh-La-La failed to pay rent several times after Tavenner took operational control of the business. As a result, the landlord withdrew funds from Marquez's letter of credit. Specifically, on December 8, 2004, the landlord drew twenty-six thousand four hundred twenty-four dollars and thirty-six cents ($2,424.36). The landlord also drew twenty-four thousand eight hundred seventy dollars and ninety-nine cents ($24,817.99) from Marquez's line of credit on December 29, 2004. Further, the landlord drew an additional twenty-four thousand six hundred seventy-two dollars and eighty-two cents ($24,672.82) from Marquez's line of credit on February 3, 2005. The landlord withdrew these funds from Marquez's line of credit because Ooh-La-La had failed to pay rent.

14. The total amount of the draws on Marquez's letter of credit were seventy-five thousand nine hundred fifteen dollars and seventeen cents ($75,915.17). Additionally, Riggs Bank imposed three hundred seventy-five dollars ($375.00) in bank fees due to the draws on Marquez's line of credit.

15. Tavenner acknowledged that it was his responsibility to pay Ooh-La-La's rent after November 23, 2003. Further, Tavenner caused Ooh-La-La to make payments totaling twenty-four thousand five hundred seventy-four dollars and sixty-seven cents ($24,574.67) to Marquez as reimbursement for the draws on the line of credit. However, neither Tavenner or Ooh-La-La has reimbursed Marquez for the remaining sums drawn from the Letter of Credit or the associated bank fees. Therefore, the total amount owed to Marquez for this default is $51,715.00.

16. Tavenner failed to have Ooh-La-La file tax returns for the following quarters: March 30, 2004, June, 30, 2004, September 30, 2004, and December 31, 2004. Specifically, the form 941s for Ooh-La-La were not filed for these quarters. Further, the taxes were not paid for these quarters. The Internal Revenue Service is attempting to collect these taxes from Marquez. The Plaintiff estimates that fifty-eight thousand three hundred thirty-seven dollars and ninety-nine cents ($58,337.99) is owed to the United States.

17. Upon information and belief, Tavenner has failed to pay the withholding taxes due for the first and second for tax year 2005. Upon information and belief the amount of liability for these taxes is approximately twenty-three thousand one hundred eighty-three dollars ($23,183.00). This amount does not include any interest or penalties.

18. Additionally, the Defendant failed to tender withholding and unemployment taxes to the local taxing authorities. As a result, the following amounts are owed to the District of Columbia: 1) seven thousand eight hundred dollars ($7,800.00) for tax year 2004; and 2) four thousand two hundred eight dollars ($4,208.00) for tax year 2005 to date. Further, two thousand two hundred seventy-eight dollars ($2,278.00) are owed to the Commonwealth of Virginia for

tax year 2004.  The amount owed for 2005 is undetermined at this time.  The State of Maryland is owed six thousand one hundred five dollars ($6,105.00) for tax year 2004.

## Count I
## Breach of Contract

19. The Plaintiff incorporates by reference the allegations contained in ¶¶ 1 - 18 above.

20. The Shareholder's Agreement constituted a binding contract between Marquez and Tavenner.

21. Tavenner breached the Shareholder's Agreement by failing to make monthly payments to Marquez in the amount of four thousand dollars ($4,000.00).  Pursuant to the Shareholder's Agreement, Tavenner was required to make monthly payments of four thousand dollars ($4,000.00) beginning thirty (30) days after the restaurant re-opened.  Therefore, Tavenner was required to begin making monthly payments in April, 2004.

22. Tavenner failed to make the full monthly payments to Marquez in May, 2004, June, 2004, July, 2004, September, 2004, October, 2004, December, 2004, January, 2005, April, 2005, May, 2005, June, 200, July, 2005, August, 2005, September, 2005, and October, 2005.  As a result of these breaches, Marquez has suffered damages of forty-seven thousand five hundred dollars ($47,500.00) as a result of this breach of the Shareholder's Agreement.

23. Tavenner further breached the Shareholder's Agreement by failing to make payments to creditors of Ooh-La-La.  The Shareholder's Agreement provides that after its execution, Tavenner shall be responsible for all obligations of Ooh-La-La.  Tavenner failed to cause Ooh-La-La to pay rent.  As a result, the landlord drew funds from the letter of credit

posted by Marquez totaling seventy-five thousand nine hundred fifteen dollars and seventeen cents ($75,915.17).  Additionally, Riggs Bank imposed three hundred seventy-five dollars ($375.00) in bank fees as a result of these draws.

24. Tavenner has failed to reimburse or have Ooh-La-La reimburse Marquez for all of these amounts.  As a result of Tavenner's breach of the Shareholder's Agreement, Marquez has suffered damages of fifty-one thousand seven hundred fifteen dollars and fifty cents ($51,715.00) as a result of the failure to rent pay to the landlord.

25. Tavenner further breached the Shareholder's Agreement by failing to have Ooh-La-La file and pay taxes to the United States and the local taxing authorities.  As a result, the Internal Revenue Service is attempting to collect these sums from Marquez.  The amount of the taxes is undetermined at this time but is estimated to be at least sixty-seven thousand seven hundred three dollars and ninety-nine cents ($67,703.99).  However, Plaintiff has suffered and continues to suffer damages as a result of this breach of the Shareholder's Agreement.

26. The Plaintiff, Marquez, has performed all obligations under the contract.

**WHEREFORE**, Mauricio Marquez requests that this Court enter an Order awarding judgment against the Defendant for compensatory damages, as may be proven at trial, pre-judgment and post judgment interest, attorney's fees and costs, and any and all other relief that justice and equity require.

*Count II*
*Breach of Fiduciary Duty*

27. The Plaintiff incorporates by reference the allegations contained in ¶¶ 1 - 26 above.

28. As a shareholder of Ooh-La-La, Tavenner owed a fiduciary duty to Marquez to

7

manage and operate Ooh-La-la in good faith and so not to injure Marquez.

29. Tavenner breached his fiduciary duty by failing to properly manage Ooh-La-La and by failing to have Ooh-La-La pay its obligations as they came due. Specifically, Ooh-La-La failed to make required rental and tax payments.

30. As a result of Tavenner's breach of his fiduciary duty to Marquez, Marquez has suffered damages of at least fifty-one thousand seven hundred fifteen dollars and fifty cents ($51,715.00).

**WHEREFORE**, Marques demand judgment against Tavenner in the amount of at least fifty-one thousand seven hundred fifteen dollars and fifty cents ($51,715.00) or amounts proven at trial, plus attorney's fees, interests, costs, and such further relief as is just.

### Count III
### Indemnification

31. The Plaintiff incorporates by reference the allegations contained in ¶¶ 1 - 30, above.

32. On or about November 23, 2003, the parties entered into the Shareholder's Agreement.

33. Pursuant to the terms of the Shareholder Agreement, Tavenner agreed and became liable for all obligations of Ooh-La-La on a go forward basis. This includes Ooh-La-La's obligation to pay rent for its premises and obligation to pay taxes.

34. Ooh-La-La failed to pay rent to its landlord and the landlord drew fifty-one thousand seven hundred fifteen dollars and fifty cents ($51,715.00) from Marquez's letter of credit.

35. Additionally, Ooh-La-La failed to make payments to the United States and local

taxing authorities for taxes owed for 2004 and 2005. As a result, the United States has made demand from Marquez for these sums. Tavenner agreed to be responsible for these amounts in the Shareholder's Agreement.

**WHEREFORE**, Marquez demands judgment against Tavenner in the amount of at least fifty-one thousand seven hundred fifteen dollars and fifty cents ($51,715.00) or amounts proven at trial, plus attorney's fees, interests, costs, and such further relief as is just.

### *Count VI*
### *Accounting*

36.   The Plaintiff incorporates by reference the allegations contained in ¶¶ 1 - 35 above.

37.   Despite having ceded operational control of Ooh-La-La to Tavenner, the Stock Purchase Agreement and Shareholder's Agreement provide that Marquez retains ownership fifty-one percent (51%) of the shares of Ooh-La-La,

38.   As a shareholder of Ooh-La-La, Marquez is entitled to the account books, records, and documents of Ooh-La-La..

39.   Tavenner has failed to allow Plaintiff access to these documents and records or to account for the sums expended by Ooh-La-La despite demand for this information and material.

**WHEREFORE**, The Plaintiff requests that this Court enter an order that: 1) requires Tavenner to account for all monies received and associated costs related to Ooh-La-La, Inc. from November, 2003 through the present; 2) requires Tavenner to permit the Plaintiff to inspect all books, records, and financial information associated with Ooh-La-La, Inc. from November, 2003 through the present; and 3) grants such other and further relief as is just.

Respectfully submitted,

\s\ Richard B. Rosenblatt
Richard B. Rosenblatt, #415797
Linda M. Dorney
**The Law Offices of Richard B. Rosenblatt, PC**
30 Courthouse Square, Suite 302
Rockville, Maryland 20850
(301) 838-0098

*Counsel for Mauricio Marquez*