## PURCHASE AND SALE OF STOCK AGREEMENT

THIS PURCHASE AND SALE OF STOCK AGREEMENT ("Agreement") is made and entered into this 20th day of November, 2003, by and among (i) MICHAEL TAVENNER ("Buyer"), (ii) MAURICIO MARQUEZ ("Seller"), and (iii) OOH-LA-LA, INC., a District of Columbia corporation (the "Corporation").

RECITALS:

R-1.  The Seller is the President and sole shareholder of the Corporation owing 600 shares of the common stock of the Corporation.

R-2.  The Corporation owns and operates a restaurant known as "Ooh-La-La" (the "Business") at 1800 M Street, N.W., Washington DC (the "Business Premises").

R-3.  Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, on the terms and subject to the conditions hereinafter stated, forty-nine percent (49%) of all of the issued and outstanding shares of capital stock of the Corporation.

NOW, THEREFORE, in consideration of the premises and the mutual promises herein made, the parties agree as follows:

## ARTICLE I

## SALE AND PURCHASE

1.1  Sale of Common Stock.  Upon the terms and subject to the conditions set forth in this Agreement, Seller shall, at Closing, as defined in Article V of this Agreement, sell and transfer to Buyer and Buyer shall purchase and acquire from Seller 294 shares (hereinafter, the "Shares") of the capital stock of the Corporation, which Shares shall represent forty-nine percent (49%) of all issued and outstanding capital stock of the Corporation.


EXHIBIT 1

1.2  **Purchase Price**. The purchase price (the "Purchase Price") for the Shares shall be Sixty Thousand Dollars ($60,000), payable in current funds by wire transfer at the Closing.

1.3  **Assets of Corporation**. Seller and the Corporation acknowledge and agree that the assets of the Corporation, at Closing, include the Corporation's leasehold interest in the real property and improvements located at 1800 M Street, N.W., Washington, D.C. 20036 (the "Leasehold Interest") and any and all assets owned by the Corporation in connection with the Corporation's restaurant business operations (the "Business"), which assets shall include all furniture, fixtures, equipment, supplies, hardware, software and software licenses, and all other personal, real and intellectual property used or employed by the Corporation in connection with the Business.

1.4  **Existence of Liens**. The Shares will be purchased free and clear of all liens, security interests, encumbrances, pledges, charges, claims, voting trusts and restrictions on transfer of any nature whatsoever.

ARTICLE II

REPRESENTATIONS AND WARRANTIES OF BUYER

2.1  Buyer hereby represents and warrants to Seller that:

(a)  **Authorization**. Buyer has full power and authority to enter into this Agreement. This Agreement constitutes a valid and binding obligation of Buyer enforceable in accordance with its terms, except as limited by bankruptcy, insolvency, reorganization, moratorium or other such laws concerning the rights of creditors; the consummation of the transactions contemplated by this Agreement shall not conflict with any applicable federal, state or local law, rule, regulation, writ, decree or order to which

Buyer is subject, nor shall it conflict with or violate any term, provision or covenant of any mortgage, indenture, contract, agreement, instrument or judgment applicable to Buyer.

(b) *Complete Disclosure*. No representation or warranty made by Buyer in this Agreement contains any untrue statement of material fact, or omits to state a material fact necessary to make the statements contained herein not misleading.

2.2 *Renewal; Survival*. All of the representations and warranties set forth in this Article II shall be deemed renewed by Buyer at the Closing as if made at and as of such time, and shall survive for two (2) years after the Closing Date, at which time they shall expire unless they are then the subject of a claim filed by Seller with Buyer. Any investigation of such matters made at any time or from time to time shall not estop Seller from making a claim prior to the expiration of such period.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES OF SELLER

3.1 *Representations and Warranties*. Seller and the Corporation, jointly and severally, represent and warrant to Buyer that:

(a) *Corporate Organization*. The Corporation is a corporation duly organized, validly existing and in good standing under the laws of the District of Columbia; and the Corporation has all requisite power and authority to own, lease, hold and operate its properties and conduct its business as and where now owned, leased, held, operated or conducted, as the case may be.

(b) *Capitalization and Security Holders*. The authorized capitalization of the Corporation consists solely of 1000 shares of capital stock, One Dollar ($1.00) par value; the Corporation has issued and there are outstanding 600 shares of capital stock,

constituting all of the issued and outstanding shares of capital stock of any class of the Corporation.

(c) <u>Issuance of Shares</u>. All outstanding shares of capital stock have been validly issued and are fully paid and non-assessable; there are no outstanding subscriptions, options, warrants, puts, calls, agreements or other commitments or rights of any type to purchase any of the shares. Except as otherwise set forth in this Agreement, there are no outstanding securities of the Corporation which are convertible into or exchangeable for any shares of capital stock of the Corporation; and the Corporation has no obligation of any kind to issue any additional securities.

(d) <u>Stock Ownership</u>. The Seller is the holder of record and sole beneficial owner of 600 shares of capital stock, which shares currently constitute one hundred percent (100%) of the issued and outstanding capital stock of the Corporation, and which securities are all of the securities (including, without limitation, debt securities) of the Corporation.

(e) <u>Seller and Corporation's Authority</u>.

(i) Seller and the Corporation have the full power and authority to enter into and carry out their respective obligations under this Agreement; and

(ii) Neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby nor the performance of the terms and conditions hereof will violate any provision of the Corporation's Articles of Incorporation or Bylaws nor constitute a breach or default (or an event which, with the lapse of time or the giving of notice, or both, would constitute a breach or default) under any lease, agreement, deed, contract, mortgage, indenture, writ, order, decree,

commitment or instrument to which Seller or the Corporation is a party or by which Seller or is bound.

(f) <u>Financial Statements</u>. Seller has delivered to Buyer the Corporation's unaudited financial statements (balance sheet and statement of earnings) as of September 30, 2003 (the "Financial Statements"). The Financial Statements have been prepared in accordance with generally accepted accounting principles applied on a consistent basis throughout the periods indicated. The Financial Statements fairly present the financial condition and operating results of the Corporation as of the dates, and for the periods, indicated therein.

(g) <u>Absence of Certain Changes</u>. There has not been since the date of the Financial Statements any material adverse change in the financial condition, assets, liabilities, or business of the Corporation.

(h) <u>Litigation</u>. There are, and within the prior twenty four (24) months there have been, no actions, suits, investigations, or proceedings pending or, to the knowledge of Seller or Corporation, threatened or anticipated against or affecting Seller, the Corporation or their assets, at law or in equity, or before any court, arbitrator, or federal, state, municipal, or other governmental department, commission, board, bureau, agency, or instrumentality, domestic or foreign. The Corporation is not operating under, subject to, or in default with respect to any order, writ, injunction, or decree of any court or federal, state, municipal, or other governmental department, commission, board, bureau, agency, or instrumentality, domestic or foreign. The Corporation has not received or had outstanding any claim or complaint from or on behalf of any employee or

former or potential employee alleging wrongful termination, failure to hire, harassment, or discrimination by reason of race, age, sex, handicap, or veteran's status.

(i)  **Absence of Undisclosed Liabilities.**  The Corporation is not subject to any material liability or financial obligation (known or unknown, direct or indirect, absolute, contingent, accrued or otherwise), other than liabilities or financial obligations recorded in the books of the Corporation and reflected in the Financial Statements or arising in the ordinary course of business since the date of the Financial Statements. The Corporation is not in default with respect to any term or condition of any indebtedness or liability (including any current or deferred trade payable). Seller and the Corporation do not know of any facts or circumstances which might reasonably serve as the basis for any material liabilities or financial obligations with respect to Seller that are not disclosed in the Financial Statements. For purposes of this Section, any individual liability, or all such liabilities in the aggregate, should be deemed to be material if the individual or aggregate value is greater than $1,000.

(j)  **Insolvency.**  Neither Seller nor the Corporation is the subject of any existing, pending or threatened insolvency or bankruptcy proceedings under the laws of any jurisdiction. To the best knowledge of Seller, the consummation of the transactions contemplated by this Agreement will not result in Seller or the Corporation being the subject of such proceedings.

(k)  **Real Property Leases.**  True, correct and complete copies of the Lease and all amendments for the Leasehold Interest have been delivered to Buyer and are identified in Schedule 3.1 attached hereto. The Lease is valid and in full force and effect, and there does not exist any default or event which with notice or lapse of time or

both would constitute a default under any Lease. The Premises is used and operated in compliance and in conformity with the Leases, contracts, commitments, licenses and permits to the extent that the failure to so comply would not have a material adverse effect on the business of the Corporation.

    (l)    <u>Contracts, Leases and Commitments</u>.

        (i)    Seller and the Corporation have provided Buyer true, correct and complete copies of all contracts, agreements, orders and commitments, presently used by the Corporation or which are binding upon the Corporation, which are material to the conduct of the Corporation's business (hereinafter, collectively referred to as the "Contracts").

        (ii)    No event has occurred or is continuing which, upon the passage of time or the giving of notice, or both, could constitute an event of default by the Corporation with respect to any Contract, and neither Seller nor the Corporation is aware of any claim of any such default having been made against Seller with respect to any Contract.

    (m)    <u>Employment Relations</u>. The Corporation is in compliance with all federal, state, or other applicable laws, respecting employment and employment practices, terms and conditions of employment, and wages and hours. The Corporation is not a party to any collective bargaining agreement. The Corporation has no employment, consulting, agency, commission, retirement, severance pay, non-competition, profit-sharing, deferred compensation or pension agreements or plans, or related practice, either written or oral, formal or informal relating to any employee of the Corporation.

(n)  Title and Related Matters.  The Corporation has good and marketable title to all of its assets, free and clear of all mortgages, options, leases, covenants, conditions, agreements, liens, encumbrances or rights or others.

(o)  Compliance with Laws.  The Corporation is in compliance with all federal, state and local laws, regulations, rules, ordinances and orders of which it is aware and to which its business and operations are subject.  The Corporation has all requisite licenses, permits and certificates from federal, state and local governmental authorities as may be necessary to conduct its business and own and operate its assets and such permits are valid and in full force and effect and will not be terminated or affected by the consummation of the transactions contemplated hereby.

(p)  Complete Disclosure.  No representation or warranty by Seller or the Corporation in this Agreement and no statement, certificate or other writing furnished to Buyer by or on behalf of Seller or the Corporation pursuant to this Agreement contains, or will contain as of the Closing, any untrue statement of a material fact or omits, or will omit as of the Closing, a material fact necessary to make the statements contained therein not misleading.

(q)  Subchapter S.  The Corporation has elected to be taxed as a "Subchapter S" corporation under the Internal Revenue Code and such election is in full force and effect.

3.2  Renewal; Survival.  All of the representations and warranties set forth in this Article III shall be deemed renewed by Seller and the Corporation at the Closing as if made at and as of such time, and each such representation and warranty shall survive the Closing for two (2) years after the Closing Date at which time they shall expire unless

they are then the subject of a claim filed by Buyer with Seller as hereinafter provided. Any investigation of such matters made at any time or from time to time shall not estop Buyer from making a claim concerning any such matter prior to the expiration of the relevant period.

## ARTICLE IV

## CONDITIONS TO OBLIGATIONS

4.1  <u>Conditions to Obligations of Buyer</u>. Each and every obligation of Buyer to be performed under this Agreement shall be subject to the satisfaction at or prior to the Closing of each of the following conditions (unless waived in writing by Buyer):

(a)  <u>Representations and Warranties</u>. The representations and warranties of Seller and the Corporation set forth in Article III of this Agreement shall have been true and correct in all material respects when made, and shall be true and correct in all material respects at and as of the Closing as though such representations and warranties were made on and as of such date and time.

(b)  <u>Performance of Agreement</u>. All covenants, conditions and other obligations under this Agreement which are to be performed or complied with by Seller and the Corporation at or prior to the Closing shall have been fully performed and complied with, including without limitation, all deliveries to be made pursuant to Section 5.2 of this Agreement.

(c)  <u>Adverse Change</u>. There is no pending or threatened claim, action, litigation or proceeding, judicial or administrative, which, if adversely determined, would in Buyer's reasonable judgment, materially impair the right or ability of the Corporation to

(c) <u>Purchase Price</u>. Buyer shall have paid the Purchase Price at the Closing in accordance with Section 1.2 of this Agreement.

ARTICLE V

CLOSING

5.1 <u>The Closing</u>. The transactions contemplated by this Agreement shall be closed, and all deliveries to be made at such time in connection therewith shall be made at the law offices of Stanley H. Goldschmidt, P.C., 1025 Connecticut Avenue, N.W., Suite 220, Washington, D.C. 20036 (said closing is herein referred to as the "Closing"). The date of Closing shall be at such a time as may be mutually agreed upon by the parties.

5.2 <u>Deliveries of Seller at Closing</u>. At the Closing, Seller will deliver or cause to be delivered to Buyer, all duly and properly executed:

(a) The stock certificates referred to in Section 4.1(d) of this Agreement in the form specified in said Section, together with any release, rescission or termination required pursuant thereto; and

(b) Such other certificates, documents and instruments as may be reasonably requested by counsel for Buyer.

5.3 <u>Deliveries of Buyer at Closing</u>. At the Closing, Buyer will deliver or cause to be delivered to Seller, all duly and properly executed, where appropriate:

(a) The Purchase Price in the form specified in Section 1.2 of this Agreement, against an appropriate receipt therefor; and

(b) Such other certificates, documents and instruments as may be reasonably requested by counsel for Seller.

-11-

## ARTICLE VI

## INDEMNIFICATION

6.1  At the Closing, Seller shall indemnify and hold the Buyer, his successors and assigns, and hold him harmless from and against any and all costs, losses, expenses, liabilities and damages (including reasonable expenses and reasonable legal fees), resulting from or arising out of:

(1)  Any breach of any representation, warranty or covenant set forth in this Agreement, or the untruth or inaccuracy thereof, including, but not limited to, any document delivered in connection herewith; and

(2)  Any absolute or contingent liability of the Corporation which arises out of a state of affairs or condition existing on or before the date of Closing, including, without limitation, any tax liability; and

(3)  Any pre-Closing defaults under any contracts, obligations, agreements or liabilities of the Corporation; and

(4)  Any liens, encumbrances or charges on or with respect to the assets of the Corporation occurring prior to closing.

6.2  The foregoing provision shall survive the Closing.

## ARTICLE VII

## MISCELLANEOUS PROVISIONS

7.1  <u>Notice</u>. All notices, requests, demands and, other communications required or permitted under this Agreement shall be deemed to have been duly given and made if in writing and served either by personal delivery to the party for whom it is intended or by being deposited postage prepaid, certified or registered mail, return receipt requested (or

such form of mail as may be substituted therefor by postal authorities), in the United States mail, bearing the address shown in this Agreement for, or such other address as may be designated in writing hereafter by such party:

If to BUYER:

>Michael Tavenner
>3877 Alder Woods Court
>Fairfax, VA 22033

with a copy to:

>Stanley H. Goldschmidt
>Law Offices of Stanley H. Goldschmidt, P.C.
>1025 Connecticut Avenue, N.W.
>Suite 220
>Washington, DC 20036

If to SELLER and the CORPORATION:

>1800 M Street, N.W.
>Washington, DC 200036

with a copy to:

>Richard B. Rosenblatt, Esq.
>Law Offices of Richard B. Rosenblatt, P.C.
>30 Courthouse Square
>Suite 302
>Rockville, MD 20850

7.2   <u>Entire Agreement</u>. This Agreement embodies the entire agreement and understanding of the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings relative to said subject matter.

7.3   <u>Binding Effect; Assignment</u>. This Agreement and the various rights and obligations arising hereunder shall inure to the benefit of and be binding upon Buyer, its legal representatives, successors and permitted assigns, and Seller, its legal

representatives, successors and permitted assigns. Neither this Agreement nor any of the rights, interests or obligations hereunder shall be transferred or assigned (by operation of law or otherwise) by any of the parties hereto without the prior written consent of the other parties (which consent shall not be unreasonably withheld).

7.4   No Third Party Beneficiaries.  Nothing herein, expressed or implied, is intended or shall be construed to confer upon or give to any person firm, corporation or legal entity, other than the parties hereto, any rights, remedies or other benefits under or by reason of this Agreement.

7.5   Counterparts.  This Agreement may be executed simultaneously in multiple counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

7.6   Captions.  The section headings of this Agreement are inserted for convenience only and shall not constitute a part of this Agreement in construing or interpreting any provision hereof.

7.7   Waiver.  This Agreement may not be changed, amended, terminated, augmented, rescinded or discharged (other than in accordance with its terms), in whole or in part, except by a writing executed by the parties hereto, and no waiver of any of the provisions or conditions of this Agreement or any of the rights of a party hereto shall be effective or binding unless such waiver shall be in writing and signed by the party claimed to have given or consented thereto.

7.8   Broker.  Each of the parties represents and warrants to the other that it has dealt with no broker or agent in connection with the sale of the Shares to the Buyer except for Papadopolous Properties, Inc. (the "Broker") whose commission shall be paid

-14-

by Seller at the Closing. The Seller shall indemnify and hold harmless the Buyer from any claims made by the Broker. Except as aforesaid, in the event any claims for brokerage commissions, finders' fees or other compensation arising out of the transaction contemplated by this Agreement are asserted by anyone, the party hereto whose action or inaction directly or indirectly gave rise to such claim shall be responsible for payment thereof, and shall indemnify and hold the other party harmless from and against all expenses and damages (including reasonable attorneys' fees) incurred as a result thereof. The aforesaid indemnification shall survive the Closing.

    7.9   Governing Law. This Agreement shall in all respects be construed in accordance with and governed by the laws of the District of Columbia.

    7.10   Remedies of Buyer. The Shares to be issued pursuant to this Agreement are unique and not readily available. Accordingly, Seller acknowledges that, in addition to all other remedies to which Buyer is entitled, Buyer shall have the right to enforce the terms of this Agreement by a decree of specific performance, provided Buyer is not in material default hereunder.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed under seal on the day and year first written above.

WITNESS/ATTEST:                                    BUYER:

_____                            _____(SEAL)
                                                   Michael Tavenner

                                                   SELLER:

_____                            _____(SEAL)
                                                   Mauricio Marquez

ATTEST:                                            CORPORATION:

                                                   OOH-LA-LA, INC.

_____                            By:_____
                                                      Mauricio Marquez, President

[CORPORATE SEAL]

3289.WPD
10/28/03

-16-