SHAREHOLDERS AGREEMENT

THIS SHAREHOLDERS AGREEMENT (this "Agreement") is made and executed this 20TH day of November, 2003, by and among (i) MAURICIO MARQUEZ ("Marquez"), (ii) MICHAEL TAVENNER ("Tavenner"), and (iii) OOH-LA-LA, INC., a District of Columbia corporation (the "Corporation").

WHEREAS, Marquez owns 306 shares (or 51%) of the issued and outstanding stock of the Corporation (the "Marquez Shares"); and

WHEREAS, Tavenner owns 294 shares (or 49%) of the issued and outstanding stock of the Corporation (the "Tavenner Shares").

WHEREAS, the parties hereto desire to enter into an Agreement providing for the conduct of the business to be carried on by the Corporation and providing for certain other contingencies which may arise in the conduct of the business and the relationship of the shareholders with each other and the Corporation.

NOW, THEREFORE, in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, each to the other paid and the receipt whereof is hereby acknowledged, it is agreed by and among the parties hereto as follows:

1. The business of the Corporation shall be to own and operate a sit down restaurant located at 1800 M Street, NW, Washington, DC (the "Restaurant"). After the date hereof, Tavenner shall have the right, in his sole discretion, to change the theme and decor of the Restaurant.

2. It is acknowledged that on even date herewith, Tavenner purchased the Tavenner Shares from Marquez pursuant to a Stock Purchase and Sale Agreement dated November 20, 2003 (the "Purchase Agreement"). Under the terms of the Purchase


EXHIBIT 2

Agreement, Marquez has represented that the Corporation has no liabilities as of the date hereof, other than those described in Exhibit A attached hereto. In reliance on the foregoing representation, Tavenner agrees to be responsible for any liabilities and obligations of the Corporation from and after the date hereof, and Marquez shall have no liability with respect to such liabilities and obligations.

3. In consideration for Tavenner being the sole shareholder liable for the debts and obligations of the Corporation, Marquez hereby assigns and transfers to Tavenner all of his right to any profits, income, distributions and any other rights with respect to the Marquez Shares (except as hereinafter provided).

4. The Board of Directors of the Corporation shall consist of those individuals selected by Tavenner. The parties hereto acknowledge that Tavenner shall serve as President and Chief Executive Officer of the Corporation.

5. Commencing on the date which is thirty (30) days after the date that the Restaurant re-opens with all construction for the new concept having been completed (such new concept, as shall be determined by Tavenner, is anticipated to be a "Cuban-salsa" theme to be operated under the name of "Yuca"), and until the date that Tavenner closes on the acquisition of the Marquez Shares (as hereinafter provided), Marquez shall receive a distribution from the Corporation of Four Thousand Dollars ($4,000) per month.

6. In addition to the foregoing, on or before January 31, 2005, Marquez shall be paid thirty percent (30%) of the "net cash flow" (hereinafter defined) of the Corporation for the calendar year 2004 (the "Net Cash Flow Payment"). The Corporation shall provide Marquez with quarterly reports of net cash flow, and Marquez shall be entitled to review the books and records of the Corporation relating to net cash flow.

7. In light of Tavenner's agreement to be solely responsible for the debts and obligations of the Corporation, Tavenner shall have overall responsibility and shall have the power and authority to make all decisions with respect to the operations of the Restaurant. In furtherance and not in limitation of the foregoing provisions and of the other provisions of this Agreement or the By-Laws of the Corporation, Tavenner shall have the right and power (i) to execute leases or modify leases for the Restaurant; (ii) to borrow money, and, as security therefor, to encumber the Restaurant ; (iii) to prepay in whole or in part, refinance, recast, increase, modify or extend any of the Corporation's loans; (iv) to modify, in whole or in part, the menu and decor of the Restaurant; (v) to sell the Restaurant; (vi) to sublet the premises wherein the Restaurant operates, or to assign the lease for the premises wherein the Restaurant operates; (vii) to acquire any equipment, property or inventory in connection with the operations of the Restaurant; (viii) to undertake advertising or promotions on behalf of the Corporation; (ix) to execute any and all contracts, agreements, purchase orders and instruments and take any actions reasonably necessary for the operations of the Corporation; (x) to hire and fire employees and consultants of the Corporation; (xi) to pay all costs and expenses of the operation of the Corporation, including, without limitation, salaries and compensation to employees, employee benefits, payroll taxes, rent, utilities, telephone, insurance, cost of goods sold, vendor invoices, laundry and uniform services, supplies, delivery costs, license fees and governmental fees, personal property taxes, and any other assessments pertaining to the Corporation, and any other cost, expense, or charge relating to the operation and management of the Corporation, any cost for repair, rehabilitation, capital improvements, renovation and maintenance of the Restaurant, trash and snow removal and exterminating services, utilities, etc.; (xii) to reserve

for operating capital, capital improvements, replacements, repairs, escrows, security deposits, tax and insurance payments and anticipated expenses or other contingencies, as Tavenner shall deem to be reasonably necessary in the conduct of the Corporation's business; and (xiii) to undertake any and all other actions which Tavenner reasonably believes are necessary for the orderly operations of the Corporation. Tavenner need devote only such time to the affairs of the Corporation as he deems necessary to properly manage the Corporation's affairs. Marquez is also executing an even date herewith the Non-Competition Agreement attached hereto as Exhibit B.

8. Marquez hereby grants to Tavenner the option to purchase the Marquez Shares for the purchase price equal to the greater of (i) One Hundred Fifty Thousand Dollars ($150,000); or (ii) thirty percent (30%) of the net cash flow of the Corporation in calendar year 2004. In order to exercise the option, Tavenner shall notify Marquez in writing no earlier than January 2, 2005 and no later than January 31, 2005. In the event that Tavenner exercises the option to acquire the Marquez Shares as aforesaid, Marquez shall not be paid the Net Cash Flow Payment for calendar year 2004.

9. In the event that Tavenner does not exercise the option to acquire the Marquez Shares by January 31, 2005, Tavenner shall purchase, and Marquez shall sell, the Marquez Shares on or before January 31, 2006. The purchase price for the Marquez Shares shall be equal to the greater of (i) One Hundred Fifty Thousand Dollars ($150,000); or (ii) thirty percent (30%) of the net cash flow of the Corporation in calendar year 2005.

10. Notwithstanding anything contained herein to the contrary, in the event that 30% of the net cash flow of the Corporation during the calendar year 2004 shall equal or exceed $250,000, Marquez shall sell and Tavenner shall purchase the Marquez Shares (i.e.,

4

in such eventuality, Marquez must sell and Tavenner must purchase the Marquez Shares). The purchase price for the Marquez Shares shall be equal to the greater of (i) One Hundred Fifty Thousand Dollars ($150,000); or (ii) thirty percent (30%) of the net cash flow of the Corporation for calendar year 2004. In such event, Marquez shall not be entitled to the Net Cash Flow Payment for calendar year 2004. The purchase price for the Marquez Shares shall be paid all cash at the closing which shall take place on February 25, 2005.

11. The purchase price for the Marquez Shares shall be paid all cash at the closing which, except as otherwise provided herein, shall take place on or before thirty (30) days following the exercise of the option. At the closing, Marquez shall deliver to Tavenner the stock certificate(s) evidencing the Marquez Shares free and clear of all liens, claims and encumbrances.

12. It is recognized that Marquez has posted a letter of credit in the amount of One Hundred Twenty Thousand Dollars ($120,000) (the "Marquez Letter of Credit") with the landlord of the Restaurant Premises (the "Landlord"). Marquez shall be obligated to ensure that the Marquez Letter of Credit remains in full force and effect and is renewed or replaced as appropriate. Marquez shall use his best efforts to cause the Landlord to agree to reduce the Marquez Letter of Credit as provided in the Restaurant Lease, and Marquez shall be obligated to post, renew or replace such reduced Letter of Credit. At such time as Tavenner shall acquire the Marquez Shares, Tavenner shall replace the Marquez Letter of Credit. Notwithstanding the foregoing, in the event that on the date of closing on the sale and acquisition of the Marquez Shares, the Marquez Letter of Credit then being held by the Landlord shall exceed Eighty Thousand Dollars ($80,000) [and provided that Tavenner has not caused the Marquez Letter of Credit to exceed Eighty Thousand Dollars ($80,000] (e.g.,

by taking any action under the Lease for the Premises which would entitle the Landlord to object to a reduction of the Marquez Letter of Credit to Eighty Thousand Dollars ($80,000)), Marquez shall be obligated to provide a letter of credit or cash in the amount by which the amount of the Letter of Credit required by the Landlord exceeds Eighty Thousand Dollars ($80,000); in such event, Tavenner shall thereafter use reasonable efforts to attempt to persuade the Landlord to reduce the Letter of Credit.

13. For purposes of this Agreement, "net cash flow" of the Corporation shall mean the taxable income for Federal income tax purposes as shown on the books of the Corporation, increased by the following:

    (a) the amount of depreciation and amortization;

    (b) any nontaxable income of the Corporation; and

    (c) any nontaxable insurance proceeds, financing proceeds, excess reserves, and any other funds deemed by Tavenner to be available for distribution, and <u>reduced</u> by the following:

    (i) payments upon the principal of any Company obligations or loans;

    (ii) the portion of any expenses, paid during the taxable year but required to be capitalized and amortized in subsequent taxable years under the Internal Revenue Code of 1986;

    (iii) expenditures for capital improvements and/or replacements; and

    (iv) such reserve for capital improvements, replacements, repairs, escrows, security deposits, tax and insurance payments and anticipated expenses or other

contingencies, as Tavenner shall deem to be reasonably necessary in the conduct of the Corporation's business.

14. Marquez shall not sell, transfer, assign or convey the Marquez Shares without the prior written consent of Tavenner. The Corporation shall not issue any further shares of stock.

15. The stock certificates evidencing the Marquez Shares shall bear an endorsement substantially in the following form:

> "Any sale, assignment, transfer, pledge or other disposition of the shares of stock represented by this certificate is restricted by and subject to the terms of a Shareholders Agreement dated _____, 2003. A copy of said Agreement is on file with the Secretary of the Corporation."

16. Except as provided in Exhibit B, any of the Shareholders may engage in, possess an interest in and/or be affiliated with other business ventures of every nature and description, whether or not in the same business as or in competition with the Corporation, independently or with others, including, but not limited to, the ownership, financing, leasing, operation, management, selling and development of restaurants and food establishments, and neither the Corporation nor the other Shareholder shall have any rights in and to said independent ventures or the income or profits derived therefrom.

17. This Agreement shall continue in full force and effect until the earlier of (i) the date that only one Shareholder owns, directly or indirectly, all of the outstanding stock of the Corporation, (ii) the date as of which this Agreement is terminated by unanimous written agreement among the Shareholders and the Corporation, or (iii) the date of the sale of substantially all of the assets of the Corporation.

18. Any and all notices, consents or other communications provided for herein shall be given in writing and delivered by hand or by registered or certified mail addressed as follows: (a) if to the Corporation, to 1800 M Street, NW, Washington, DC 20036 and (b) if to a Shareholder, to the address shown below each Shareholder's respective signature. Each such notice shall be deemed given on the date it is personally delivered, or if mailed, three (3) business days after the date of mailing. Copies of notices to Marquez shall be sent simultaneously to Richard B. Rosenblatt, Esq., The Law Offices of Richard B. Rosenblatt, PC, 30 Courthouse Square, Suite 302, Rockville, MD 20850, and copies of notices to Tavenner shall be sent simultaneously to Stanley H. Goldschmidt, Esq., 1025 Connecticut Avenue, NW, Suite 220, Washington, DC 20036.

19. This Agreement contains the entire agreement and understanding among the parties with respect to the subject matter hereof, and may not be modified except by written agreement signed by all of the parties. This Agreement supersedes all prior agreements or understandings, oral or written, among the parties relating to the subject matter hereof. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event of any inconsistency between the terms of this Agreement and the provisions of the By Laws of the Corporation, the terms of this Agreement shall control.

20. The terms of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the respective successors, assigns, executors and personal representations of the parties hereto and the holders, from time to time, of any of the stock of the Corporation. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia. If any term of this Agreement shall

be held to be invalid, illegal or unenforceable, either in whole or in part, neither the validity of the remaining part of such term nor validity of any other term of this Agreement shall be in any way affected thereby. This Agreement may be executed in counterpart signature pages.

IN WITNESS WHEREOF, the parties hereto have hereunder set their hands and seals on the day and year first above written.

WITNESS:

_____  _____(SEAL)
                                 Mauricio Marquez
                                 8904 Royal Crest Drive
                                 Hyattsville, MD 20783

_____  _____(SEAL)
                                 Michael Tavenner
                                 3877 Alder Woods Court
                                 Fairfax, VA 22033

ATTEST:                          OOH-LA-LA, INC.

_____  By: _____(SEAL)

[CORPORATE SEAL]

3292.WPD

9

OOH LA LA INC. EXHIBIT -A-

| Company | Description | Payment | |
|---|---|---|---|
| 1. Business Leasing Ass | Restaurant Computer System | $ 1,044.33 | Monthly |
| 2. Carbomix | Soda and Juice System | $ 84.60 | Plus Order |
| 3. American Energy | Dishwasher | $ 110.00 | Plus Chemicals and Cycles |
| 4. Dishnetwork | Satelite | $ 104.03 | Plus pay per view |
| 5. Roberts Oxygen | Tanks for draft and helium | $ 23.05 | Plus order |
| 6. All pro security | Alarm monitoring | $ 105.00 | quaterly |
| 7. Capital Eagle | Beer distributor | | Orders only |
| 8. Premium Distributors | Beer distributor | | Orders only |
| 9. Washington Wholesale | Liquor distributor | | Orders Only |
| 10. National Distributing Co. | Beer and Liquor distributor | | Orders only |
| 11. Mauricio Marquez | 1% Letter of credit | $ 1,200.00 | Annualy Due April |
| 12. Washington Gas | Gas Supply | | Monthly Use |
| 13. Pepco | Electricity | | Monthly Use |
| 14. Allegiance Telecom | Phone Services | | Monthly Use |
| 15. Lerner Corporation | Water | | Monthly Use |
| 16. Lerner Corporation | Rent | | As described on lease |